

# THE ATTORNEY GENERAL
## OF TEXAS

Grover Sellers

AUSTIN 11, TEXAS

ATTORNEY GENERAL

Hon. T. M. Trimble, First Assistant
State Superintendent of Public Instruction
Austin, Texas

Opinion No. O-6797

Re: Requirements under the provisions
of Section 1 of Article I of Senate
Bill 167, Acts 49th Legislature,
with reference to school districts'
eligibility for Equalization Aid.

Dear Sir:

We are in receipt of your letter of recent date requesting the opinion of this department on the above stated matter. Your department has also furnished us a letter addressed to Dr. L. A. Woods from Mr. R. S. Bolter, County Superintendent of Smith County, Texas, wherein many questions are raised with reference to the subject of your inquiry. We quote from your letter as follows:

"The teacher in a one-teacher school has never been considered as an administrator. The Rural Aid Bill, under which we are now operating, allows such a teacher $5 per month in addition to her schedule salary for performing such minor administrative duties necessary to the conduct of the school in which she is teaching. The legal administrator of such a school is the county superintendent. It is necessary for many of the teachers in one and two-teacher schools to drive the school bus as there is no one else available.

"Is it possible, under the present Equalization Law, for the board of trustees and the county superintendent to pay the

head teacher of a common school district
for service which she is rendering as a
bus driver?

As a general provision with reference to the
county transportation system, we call your attention to the
following provisions contained in Article V of Senate Bill
167, Acts 49th Legislature:

"The County Superintendent and County
School Boards of the several counties of this
state subject to the approval of the State
Superintendent of Public Instruction, are
hereby authorized to annually set up the
most economical system of transportation poss-
ible for the purpose of transporting both grade
and high school pupils from their districts,and with-
in their districts. The county shall be regarded as
the unit and the warrant made payable to the County
Board Transportation Fund, on the total transporta-
tion earned within the county not to exceed
the total approved cost thereof; . . .

"County Boards of Trustees are hereby
authorized to employ bus drivers for one year,
and the salary of no bus driver may be paid
out of the County Board Transportation Fund
created herein unless such bus driver is so
employed. Provided, further, that only pupils
or persons directly connected with the school
system shall be transported on school buses
while in the process of transporting pupils to
and from the school, and any bus driver vio-
lating the foregoing provisions shall forfeit
his contract and shall be immediately dis-
charged by the County Board of Trustees. . . ."

Article I of Senate Bill 167, sets forth certain
specific requirements with which a school district must comply
in order for such district to be eligible for Equalization Aid.
We call your attention particularly to the following provi-
sions contained in Section 1 of Article I of said Act:

"No school district will be eligible
for any type of aid, except tuition aid, under
the provisions of this Act, which pays any

salary above those specified in this
Act from any State, local or Federal
funds, used to supplement salaries of
Vocational Agricultural, Home Econo-
mics and Trade & Industries teachers,
and funds from the Federal Lanham Act.

"Provided that the salaries of
atheletic directors, band directors or
lunch room supervisors may be supplemented,
from funds derived from sources other than
taxes, without making the school ineligi-
ble under this section; and provided further
that teachers who also serve as bus drivers,
but who perform no administrative duties,
may be paid an additional salary as bus
drivers out of any funds of the district
derived from a local maintenance tax in
excess of the local maintenance tax of
Fifty Cents (50¢) on the One Hundred
Dollars ($100.00) valuation required to
be levied by Sec. 2 of Article 1 hereof;
provided further, that the additional
salary paid for serving as bus driver
shall conform to the salary scale paid
other bus drivers of the district, and an
itemized list of all such supplements shall
be furnished the State Department of Edu-
cation and the Legislative Accountant with
the general budget of the district."

Under the foregoing provisions, when a district
pays any salary above those specified in the Act from any state,
local or Federal funds whatsoever, such district will not be
eligible for any kind of aid (except high school tuition aid)
except:

(1) Where salaries of Vocational,
Agriculture, Home Economics, and Trade In-
dustries teachers are supplemented from
Federal funds, and

(2) Where salaries are supplemented
from funds derived from the Federal Lanham
Act;

(3) Where salaries of athletic directors,

band directors, or lunch room supervisors are
supplemented from funds derived from sources
other than taxes;

(4) Where teachers who perform no admin-
istrative duties are paid an additional salary
as bus drivers out of the funds of the district
derived from a local maintenance tax in excess
of the local maintenance tax of the required
Fifty Cents (50¢) on the One Hundred Dollars
($100.00) valuation.

Under the above quoted provisions, we note that a dis-
trict is not rendered ineligible for Equalization Aid by reason
of paying salaries above those specified in the Act when a
teacher who performs no administrative duties is paid an addi-
tional salary for services as a bus driver out of the designated
local funds. It is further provided that the additional salary
which is authorized to be paid to a teacher out of the specified
local funds of the district, must conform to the salary simi-
larly paid other bus drivers of the district. In this con-
nection, we note that Article V of Senate Bill 167, supra,
makes general provisions for setting up a County Transportation
System and for the payment of the bus drivers out of the County
Board Transportation Fund. We note, however, that where a
school teacher who performs no administrative duties is a bus
driver, Article I of the Act authorizes the payment of the
additional salary of said teacher for services as a bus driver
out of "funds of the District derived from local maintenance
taxes in excess of the Fifty Cents (50¢) on the One Hundred
Dollars ($100.00) valuation."

We call your attention to the following language con-
tained in 39 Tex.Jur. "Statutes", Sec. 101, p. 191:

"Where one section of an act prescribes a
general rule which, without qualification, would
embrace an entire class of subjects, and another
section prescribes a different rule for individual
subjects of the same class, the latter will be
construed as an exception to the general rule."

It is stated in 39 Tex.Jur. "Statutes" Section 114, p. 213:

"When a statute makes a general provision ap-
parently to all cases and a special provision for
a particular case or class, the former yields and
the latter prevails insofar as the particular case
or class is concerned."

Moreover, it is stated in 39 Tex.Jur. "Statutes" Section 100, pp.189-190:

"A provision limiting a thing to be done in a particular form or manner implies that it shall not be done otherwise . . . when a right or power is granted and the method of its exercise is prescribed, the prescribed method excludes all others."

In view of the foregoing, it is apparent that the provisions of Article I, with reference to the method of payment of the additional salary of a teacher who performs no administrative duties and serves as a bus driver, constitutes an exception to the general provisions of Article V, with reference to the general method of payment of bus drivers, and therefore prevails as the authorized method of payment of a teacher for services as a bus driver. In view of the foregoing, you are advised that a teacher in a district otherwise eligible for Equalization Aid, who serves as a bus driver, cannot be paid an additional salary for such services from the County Board Transportation Fund, for the payment of such teacher for such services is governed by that portion of Article I which provides for such payment "out of any funds of the District derived from a local maintenance tax in excess of the local maintenance tax of Fifty Cents (50¢) on the One Hundred Dollars ($100.00) valuation."

In order to answer your question as to whether a common school district's eligibility for rural aid is affected by paying the head teacher thereof an additional salary for driving a school bus, it is necessary to determine what is meant by the performance of "administrative duties" within the contemplation of this Act. In construing a statutory word or phrase, it is proper to take into consideration the meaning of the same or similar language used elsewhere in the Act (39 Tex. Jur. "Statutes", Sec. 108, p. 201). With further reference to this matter, it is stated in 39 Tex. Jur. "Statutes" Sec. 104, p. 196-197:

"In every case the particular meaning depends upon, and must be determined by, the context and subject matter and the evident intention of the Legislature."

We call your attention to the following provisions contained in Section 1 of Article I of the Act:

Hon. T. M. Trimble - page 6

"No school district will be eligible for
any type of aid, except tuition aid, under the
provisions of this Act, which pays any salary above
those specified in this Act from any state, local
or Federal funds whatsoever . . . provided . . .
that teachers who also serve as bus drivers, but
who perform no administrative duties, may be paid
an additional salary as bus drivers out of any
funds of the district derived from a local main-
tenance tax in excess of the local maintenance tax
of Fifty Cents (50¢) on the One Hundred Dollars
($100.00) valuation required to be levied by Sec-
tion 2 of Article I hereof; provided further, that
the additional salary paid for serving as bus
driver shall conform to the salary scale paid
other bus drivers of the district, and an itemized
list of all such supplements shall be furnished the
State Department of Education and the Legislative
Accountant with the general budget of the dis-
trict." (Underscoring ours.)

Also, we call your attention to the following language contained
in Section 2 of Article III of the above mentioned act:

"Salary Schedule and Length of Term. The
base pay for class room teachers in unaccredited
schools shall be One Hundred and Thirty-five
Dollars (135.00) per month for eight (8) months.
The base pay for class room teachers in accredited
schools shall be One Hundred and Thirty-five
Dollars ($135.00) per month for nine (9) months.
The base pay for Home Economics teachers shall be
One Hundred and Thirty-five Dollars($135.00) per
month for ten (10) months. The base pay for Vo-
cational Agriculture teachers, and Trades and In-
dustries teachers shall be One Hundred Seventeen
Dollars and Fifty Cents ($117.50) per month for
twelve months (12). Three Dollars ($3.00) per month
shall be added for each year of college credit over
one year not to exceed Fifty Dollars ($15.00).
One Dollar and Fifty Cents ($1.50) per month shall
be added for each year of teaching experience; pro-
vided such amount added for experience shall not
exceed Fifteen Dollars ($15.00) per month.

"Administrative Salaries. Additional allowances for teachers serving as principals in unaccredited schools shall be Five Dollars ($5.00) per month per teacher but in no instance to exceed Forty Dollars ($40.00) per month.

"Allowances for high school principals in accredited schools shall be Twelve Dollars ($12.00) per month in schools with nine (9) to eleven (11) teachers; twelve (12) twelve to nineteen (19) teachers, Thirty Dollars ($30.00); twenty (20) to twenty-nine (29) teachers, Thirty-five Dollars ($35.00) per month; thirty (30) or more teachers, Forty Dollars ($40.00) per month. Salaries for high school principals in accredited schools shall be paid for ten (10) months. Superintendents in schools having five (5) teachers shall receive an additional allowance of Forty-five Dollars ($45.00) per month; six (6) to seven (7) teachers, Fifty Dollars ($50.00) per month; eight (8) to eleven (11) teachers, Fifty-five Dollars ($55.00) per month; twelve (12) to nineteen teachers, Seventy-five Dollars ($75.00) per month; twenty (20) to twenty-nine (29) teachers, Ninety-five Dollars ($95.00) per month; thirty (30) or more teachers, One Hundred-five Dollars ($105.00) per month. Salaries of superintendents shall be paid for twelve (12) months. No school with less than nine (9) teachers can have both principal and superintendent. Principals of accredited elementary schools in a district which does not include a high school shall receive an additional allowance of Six Dollars ($6.00) per month per teacher, not to exceed Fifty-four Dollars ($54.00) per month." (Underscoring ours)

In the above salary schedule we note that the first paragraph sets the base pay for class room teachers, while the second paragraph of said section under the heading of "Administrative Salaries" authorizes additional allowances for teachers serving as principals in unaccredited schools and for principals and superintendents in accredited schools. It is manifest that the law contemplates that any teacher who would be entitled and authorized to receive "additional allowance" authorized under the classification, "Administrative Salaries", should be regarded as a teacher performing administrative duties. When the language contained in Section 1 of Article I with reference to a teacher "who performs no administrative duties" is considered in context with the term "Administrative Salaries" contained in Section 2 of Article III of the Act, authorizing an additional allowance in the compensation of such teachers, it is manifest that within the contemplation of this Act the language relative to teachers

"who perform no administrative duties" referred to teachers other than those who were receiving "Administrative Salaries" under the provisions of Section 2 of Article III.

In view of the foregoing, it is our opinion that when a district pays a teacher, who receives "additional allowance" as an "administrative salary" (and within the contemplation of the Act performs administrative duties), an additional salary for services as a bus driver, the payment of such additional salary would not be in compliance with the terms of the exception that authorizes a district to pay additional salary to a teacher "who performs no administrative duties" without impairing such district's eligibility for Equalization Aid.

In connection with the construction of exceptions or "provisos", we call your attention to the following language contained in 39 Tex. Jur. "Statutes", Sec.101, p. 191:

"The fact that an Act contains one or more exceptions discloses an intention on the part of the Legislature that there should be no other exceptions and that the Act should apply in all cases not excepted. . . In construing a statute it is not ordinarily permissible to imply an exception . . . or to enlarge an exception so as to include cases not within its terms."

In view of the above and foregoing, it is our opinion that under the provisions of Section 1 of Article I of the Equalization Act, a District that pays a teacher, who receives an "additional allowance" as an "Administrative Salary" (within the contemplation of the Act for the performance of administrative duties), an additional salary for driving a school bus would constitute the payment of an additional salary not authorized by the terms of any exception or proviso in the Act and, therefore, such payment would render the district ineligible for any type of Equalization Aid except tuition aid. You are therefore advised that a common school district that pays an additional salary for services as a bus driver to a head teacher or principal who is entitled to or receives any "additional allowance" in any amount, as an administrative salary as provided in Section 2 of Article III, would be ineligible to receive any type of aid, except tuition aid.

As pointed out, however, in a previous portion of this opinion, a school district may pay additional salary to a teacher,

who performs no administrative duties, for services as a bus
driver out of funds of the district derived from local main-
tenance tax in excess of the required Fifty Cents (50¢) on the
One Hundred Dollars ($100.00) valuation without affecting said
district's eligibility for Equalization Aid, but in no event
may a teacher be paid an additional salary for services as a
bus driver from the County Board Transportation Fund.

We have endeavored herein to construe the statutory
provisions involved in accordance with the recognized princi-
ples of statutory construction. We regret that the provisions
so construed will not satisfactorily and adequately cover many
contingencies and emergencies that may arise in connection with
the administration of the law. Consequently, such conditions
constitute problems for legislative consideration.

Yours very truly

ATTORNEY GENERAL OF TEXAS


By   J. A. Ellis
     J. A. Ellis
APPROVED May 16,1946     Assistant

Carlos Ashley
First Assistant
Attorney General
JAE:djm:bt